# United States Court of Appeals

### *for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

JOHN ROBERT WILLIAMS, III,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT GREENBELT

## APPELLANT'S OPENING BRIEF

Marc G. Hall
LAW OFFICE OF MARC G. HALL, P.C.
6411 Ivy Lane, Suite 304
Greenbelt, Maryland 20720
(240) 205-3041

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

JURISDICTION .................................................................................. 1

STATEMENT OF ISSUES ................................................................ 1

STATEMENT OF CASE .................................................................... 1

STATEMENT OF FACTS ................................................................. 2

SUMMARY OF ARGUMENT ........................................................... 4

ARGUMENT ....................................................................................... 4

    I.    WHETHER THE APPLICATION OF 18 U.S.C § 922(g)(1) IN THIS CASE VIOLATES THE APPELLANT'S SECOND AMENDMENT RIGHT TO KEEP AND BEAR ARMS? ................................ 4

        A.    Standard of Review .................................................... 4

        B.    Argument ..................................................................... 4

    II.    WHETHER THE COURT ERRED BY NOT GRANTING THE DEFENSE MOTION TO SUPPRESS THE SEIZURE OF THE FIREARM IN THIS CASE? ............................................ 9

        A.    Standard of Review .................................................... 9

        B.    Argument ..................................................................... 9

    III.    WHETHER THE COURT ERRED IN DENYING THE DEFENSE MOTION TO DISMISS BASED UPON SPEEDY TRIAL ISSUES? ............................................................................. 11

        A.    Standard of Review .................................................... 11

        B.    Argument ..................................................................... 11

            1.    Procedural Background .................................. 12

            2.    Speedy Trial Act ............................................ 13

CONCLUSION .................................................................................... 16

REQUEST FOR ORAL ARGUMENT ............................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Howell v. Barker*,
  904 F2d. 889 (4th Cir. 1990) ........................................................11

*Kentucky v. King*,
  563 U.S. 452 (2011)........................................................................10

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
  597 U.S. 1 (2022)......................................................................*passim*

*Ornelas v United States*,
  517 U.S. 690 (1996)..........................................................................9

*Range v. Attorney General*,
  69 F.4th 96 (2023) ............................................................................5

*Terry v. Ohio*,
  392 U.S. 1 (1968)..............................................................................9

*U.S. v. DePew,*
  932 F. 2d 324 (4th Cir. 1991) .........................................................9

*United States v. Bullock,*
  3:18-CR-165 (S.D. Miss.)................................................................7

*United States v. Collins,*
  982 F.3d 236 (4th Cir. 2020) ..........................................................4

*United States v. Davis,*
  997 F.3d 191 (4th Cir. May 7, 2021)............................................11

*United States v. Duarte,*
  No. 22-50048 (9th Cir. May 9, 2024)..............................................6

*United States v. Hunt*,
  No. 22-4525, F.4th , 2024 WL 5149611 (4th Cir. Dec. 18, 2024).................7

*United States v. McGee,*
  736 F.3d 263 (4th Cir. 2013) ........................................................11

*United States v. Mendenhall,*
  446. U.S. 544 (4th Cir. 1980) .........................................................9

*United States v. Patiuka,*
    804 F.3d 684 (4th Cir. 2015) ........................................................10

*United States v. Quiroz,*
    No. PE:22-CR-00427-DC (W.D. Tex.) ...........................................7

*United States v. Rahimi,*
    144 S. Ct. 1889 (2024), No. 21-11001 (5th Cir.) ..................*passim*

*United States v. Rodriguez-Amaya,*
    521 F.3d 437 (4th Cir. 2008) ........................................................14

*United States v. Thomas,*
    55 F.3d 144 (4th Cir. 1995) ..........................................................14

*United States v. Woolfolk,*
    399 F.3d 590 (4th Cir. 2005) ........................................................14

**Statutes & Other Authorities:**

18 U.S.C. § 3161(b) ................................................................12, 14

18 U.S.C. § 3162(a)(1) ..................................................................14

18 U.S.C. § 3231 ..............................................................................1

18 U.S.C. § 922(g) ......................................................................5, 8

18 U.S.C. § 922(g)(1) .......................................................1, 4, 5, 7

18 U.S.C. § 922(g)(8) ...................................................................6, 8

18 U.S.C. § 922(n) ...........................................................................7

28 U.S.C. § 1291 ..............................................................................1

Fed. R. Crim. P. 48(b)(1) ..............................................................12

## JURISDICTION

The district court had jurisdiction in this case under 18 U.S.C. § 3231 and entered final judgment as to John Robert Williams III on September 12, 2024. Joint Appendix [hereinafter JA] at 494. Mr. Williams filed his notice of appeal on September 16, 2024, JA500, within 14 days after entry of judgment in his case. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

I.      WHETHER THE APPLICATION OF 18 U.S.C § 922(g)(1) IN THIS CASE VIOLATES THE APPELLANT'S SECOND AMENDMENT RIGHT TO KEEP AND BEAR ARMS?

II.     WHETHER THE COURT ERRED BY NOT GRANTING THE DEFENSE MOTION TO SUPPRESS THE SEIZURE OF THE FIREARM IN THIS CASE?

III.    WHETHER THE COURT ERRED IN DENYING THE DEFENSE MOTION TO DISMISS BASED UPON SPEEDY TRIAL ISSUES?

## STATEMENT OF CASE

On May 31, 2024, after a jury trial, the appellant was convicted of the following offense, Possession of a Firearm and Ammunition by a person after previously been convicted of a crime punishable by one year or more. JA1.

On September 11, 2024, a sentence of 72 months in the Bureau of Prisons was imposed on Count One to be followed by 3 years of supervised release. JA494. The appellant, Mr. Williams, now appeals his conviction.

# STATEMENT OF FACTS

The appellant, Mr. Williams, was indicted by a Grand Jury for Possession of a Firearm and Ammunition by a Felon. JA19. The charge stems from an incident on September 10, 2022, when Prince George's County Police officers conducted a warrantless stop, arrest, and vehicle search of the appellant and his car.

On September 10, 2022, during the evening hours, PGPD Private First-Class Waters was conducting a patrol in Oxon Hill, Maryland. JA267. There had been ongoing complaints of individuals loitering in the area of the 6200 block of Livingston Road. JA269. Officer Waters had previously received information regarding an individual possibly involved in the sale of narcotics in front of Tobacco World, a commercial establishment. JA291. There was also information that "a White Chevy Trailblazer SUV, bearing unknown tag," was "possibly involved." Officer Waters saw a White Chevy Trailblazer parked on the side of the store and noticed two men standing next to the open driver side door. JA292. As Officer Waters drove by the Trailblazer, he saw the appellant, Mr. Williams, engaging with another unknown individual wearing a gray hoodie in conversation. JA249-250. The appellant was holding a blue bag and when he turned toward Officer Waters, he threw the bag inside the vehicle. Officer Waters then left the area to call for backup. JA281. Officer Waters testified he believed

he had interrupted a hand-to-hand narcotic transaction, and he requested backup in order to conduct an investigative stop of the vehicle and two individuals. JA295.

Shortly thereafter, additional officers arrived at the parking lot and detained the two individuals near the car, including the appellant. One of those officers, Officer Coleman, approached Mr. Williams and ordered him to walk towards the officer and stand by his car. JA237. The appellant raised his hands and complied with the officer's orders. Officer Waters then approached Mr. Williams, asked to see his identification, and ordered him to walk towards a police vehicle. JA348-349. Once the appellant was detained with his back to the officer, Officer Waters observed the grip of a firearm in Mr. Williams's back right pants pocket. JA420. Officers then handcuffed the appellant, Mr. Williams, and seized the firearm as well as car keys from Mr. Williams's person. JA355. Officers then moved on to search the vehicle. Officer Waters shined a flashlight into the vehicle's window and observed in plain view on the driver's seat several small, clear plastic bags containing suspected marijuana, as well as a digital scale containing a white powder residue. JA342. During a search of the vehicle, officers found two additional firearms, controlled substances, packaging materials, and three cell phones. JA363. Mr. Williams was arrested and taken to a nearby police station.

# SUMMARY OF ARGUMENT

The district court erred when it did not suppress the stop, search and seizure in this case. The court also erred by not dismissing the matter for speedy trial grounds. Finally, the application of 18 U.S.C § 922(g)(1) in this case violates the appellant's second amendment right to keep and bear arms.

# ARGUMENT

I.   WHETHER THE APPLICATION OF 18 U.S.C § 922(g)(1) IN THIS CASE VIOLATES THE APPELLANT'S SECOND AMENDMENT RIGHT TO KEEP AND BEAR ARMS?

## A.   Standard of Review

Whether a statute of conviction complies with the Second Amendment is a question of law that is reviewed de novo. *United States v. Collins*, 982 F.3d 236, 243 (4th Cir. 2020).

## B.   Argument

The issue of possession of a firearm by someone who has a previous felony conviction under 18 U.S.C. § 922(g)(1) is a rapidly evolving area of law. Since *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 17 (2022), courts have struggled with the question. *Bruen* requires that courts must assess Second Amendment challenges by asking (1) whether the Second Amendment's "plain text" covers an individual's conduct, and if so, (2) whether the government has carried the heavy burden of showing that a challenged law is "consistent with this nation's

historical tradition of firearm regulation." *Bruen* also established that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."

The Supreme Court has also reaffirmed in Bruen that the right to "keep and bear arms" belongs to "the people," which includes all Americans. The defendant's mere status as a felon is insufficient to strip him of his Second Amendment rights under a categorical ban that was not historically recognized at the Founding.

The government has also failed to show a historical tradition of firearm prohibitions, analogous to §922(g). There is no historical precedent from the Founding Era that categorically disarmed felons. At the time of the Second Amendment's ratification, firearm regulations were narrowly tailored to specific dangers (e.g., surety laws, "going armed" laws)—not broad categorical bans. The government's reliance on laws disarming slaves, Native Americans, and Loyalists is inapposite because those laws were based on political and racial subjugation, not concerns about individual dangerousness. Those laws today would be considered unconstitutional for other obvious reasons1.

The various circuits have reached different conclusions on this point. In the Third Circuit case, *Range v. Attorney General*, 69 F.4th 96 (2023) the 3rd Circuit held that 18 U.S.C. § 922(g)(1), as applied to Range, was unconstitutional. Range had a prior conviction for making false statements to obtain food stamps in violation

of Pennsylvania law, an offense that subjected him to the felon-in-possession prohibition. Range argued that the felon-in-possession prohibition—which he claimed prevented him from purchasing a rifle for deer hunting and self-defense purposes—violated the Second Amendment. A three-judge panel of the Third Circuit ruled in favor of the government. The full, en banc Third Circuit reversed, agreeing with Range.

In the Ninth Circuit case, *United States v. Duarte*, No. 22-50048 (9th Cir. May 9, 2024), the appellate court reached a similar conclusion. In that case, *Duarte* had five prior, nonviolent criminal convictions under California law. The majority held that the government's proffered historical analogues for the lifetime felon-in-possession ban were inadequate. The majority reasoned that the Founders had not enacted laws prohibiting individuals convicted of crimes from possessing firearms; early laws generally were aimed at disarming certain disloyal individuals, insurrectionists, and noncitizens; state proposals of the time would only have disarmed individuals threatening violence or presenting a risk of public injury; harsh punishments were reserved for certain felony offenses, not all (violent and nonviolent) felonies; and even then, the historic response to the underlying crime controlled, and some of Duarte's offenses either were nonexistent or would have been a misdemeanor at the time of the founding. Other courts have followed suit. *United States v. Rahimi*, No. 21-11001 (5th Cir.): Found 18 U.S.C. § 922(g)(8)

unconstitutional for lack of a historical analogue. *United States v. Bullock*, 3:18-CR-165 (S.D. Miss.): Found § 922(g)(1) (felon-in-possession) unconstitutional as applied. *United States v. Quiroz,* No. PE:22-CR-00427-DC (W.D. Tex.): Declared 18 U.S.C. § 922(n) unconstitutional.

By contrast, following *Bruen*, the Seventh, Eighth, Tenth, and Eleventh Circuits have rejected constitutional challenges to Section 922(g)(1), either as applied to particular parties, or categorically.

The Supreme Court addressed the issue of possession of a firearm by a prohibited person in a slightly different context in United *States v. Rahimi*, 144 S. Ct. 1889 (2024), upholding the ability to *temporarily* (emphasis added) restrict individuals deemed to be a physical threat from gun possession where there is a civil domestic violence restraining order.

This Court has recently ruled on this issue in In *United States v. Hunt*, No. 22-4525, __ F.4th ___, 2024 WL 5149611 (4th Cir. Dec. 18, 2024), In *Hunt* this Court held that 18 §922(g)(1) is facially constitutional under the Second Amendment and that as-applied challenges will not be entertained "unless the felony conviction is pardoned or the law defining the crime of conviction is found unconstitutional or otherwise unlawful." However, the appellant's position is that *Hunt* doesn't preclude all challenges to a felon in possession conviction. *Hunt* doesn't answer the important

question as to whether this prohibition is a lifetime ban or one that is more in line with the temporary ban such as in *Rahimi.*

In *Rahimi* the Supreme Court was dealing with 18 U.S.C. § 922(g)(8). Rahimi was under a civil domestic restraining order. Such an order has an expiration at a given time subject to renewal when appropriate. As such, once the restraining order expires, the subject of the order is no longer prohibited from possessing a firearm.

The appellant posits that a lifetime ban for possession of a firearm by a convicted felon is not "consistent with this nation's historical tradition of firearm regulation" required by *Bruen.* The historical laws cited by the government are not sufficiently analogous to justify the broad, categorical firearm prohibition under § 922(g). And, these Founding-era regulations did not impose lifetime firearm bans based solely on status.

In this case, the element requiring proof of a prior felony conviction was admitted by way of a stipulation. However, they are detailed in the Pre-Sentence Report, so his prior criminal record is before this Court. Nevertheless, nothing in the current case law on the subject addresses whether it is constitutional to ban the possession of a firearm by a convicted felon indefinitely. A much more common-sense approach and one that would certainly pass constitutional muster and be consistent with *Rahimi,* would be a ban only for the term of a person's imprisonment and any following period of supervised release or probation. The government has

failed to show that the defendant is "dangerous" in any way that would justify disarmament.

II.  WHETHER THE COURT ERRED BY NOT GRANTING THE DEFENSE MOTION TO SUPPRESS THE SEIZURE OF THE FIREARM IN THIS CASE?

**A.  Standard Of Review**

When a defendant moves a district court to suppress a warrantless search, the standard of review of the district court's denial of that motion is de novo. *Ornelas v United States*, 517 U.S. 690, 699 (1996); U.S. v. DePew, 932 F. 2d 324, 327 (4th Cir. 1991).

**B.  Argument**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const., amend. IV. A person is seized, under the Fourth Amendment, "when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446. U.S. 544, 553 (4th Cir. 1980). A seizure occurs when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554. Officers may conduct a limited investigatory stop only if they have reasonable, articulable suspicion that the individual is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

In this case, the appellant was seized when Officer Coleman ordered him to walk towards and stand next to his vehicle. The officers' presence and Officer Coleman's orders constituted a show of authority restraining the appellant's freedom of movement. Mr. Williams submitted to the officers' show of authority, and clearly a reasonable person in Mr. Williams's position would not have felt free to leave.

Prior to the gun being observed, the officers who approached Mr. Williams lacked a reasonable articulable suspicion that the appellant had committed any crime. Therefore, his seizure and the subsequent search was unlawful and should have been suppressed. It was only after the officers had detained the appellant that the baseplate of the gun was observed.

The officers' warrantless search of Mr. Williams's car also violated the Fourth Amendment. With limited exceptions, an officer must have probable cause to believe that a vehicle contains evidence of a crime in order to conduct a warrantless search. *United States v. Patiuka*, 804 F.3d 684, 690 (4th Cir. 2015). An officer may base this probable cause on evidence in plain view, but only "if they have not violated the Fourth Amendment in arriving at the spot" where they observed the evidence in question. *Kentucky v. King*, 563 U.S. 452, 463 (2011). "The government bears the burden of proof in justifying a warrantless search or

seizure." *United States v. Davis*, 997 F.3d 191, 195 (4th Cir. May 7, 2021) (quoting *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013)).

Here, once Mr. Williams was detained, officers took his car keys from his person, then looked into, opened, and searched his vehicle. Because officers were not in a lawful vantage point when they looked into his car, and because they lacked probable cause to believe the car contained evidence of a crime, the search violated the Fourth Amendment and should have been suppressed by the trial court.

III. WHETHER THE COURT ERRED IN DENYING THE DEFENSE MOTION TO DISMISS BASED UPON SPEEDY TRIAL ISSUES?

**A.    Standard Of Review**

Whether pre-indictment delay violates the due process basis is determined by this Court on a case-by-case basis. *Howell v. Barker*, 904 F2d. 889, 895 (4th Cir. 1990). Pre-indictment delay will only constitute reversable error when the delay violates "fundamental conceptions of justice" and where the defendant has suffered actual prejudice.

**B.    Argument**

Following his arrest, the appellant, Mr. Williams, was detained on state charges that ultimately were dropped. The state arrest and prosecution served as a placeholder for what would eventually be a federal indictment. Therefore, Mr. Williams's September 10, 2022, arrest and subsequent detention constituted "restraint from federal action" triggering the Speedy Trial Act's thirty-day limit

between arrest and indictment. However, it was 102 days between Mr. Williams's arrest and the filing of the federal indictment. Therefore, the district court erred when it denied the motion to dismiss the indictment under 18 U.S.C. § 3161(b) and Federal Rule of Criminal Procedure 48(b)(1).

## 1. Procedural Background

Mr. Williams was arrested by Prince George's County Police Department ("PGCPD") officers the night of September 10, 2022. He appeared the following day for his initial appearance in the District Court for Maryland for Prince George's County following the filing of a statement of charges. A bail review hearing was held on September 13, 2022, and a preliminary hearing was scheduled for October 11, 2022.

On September 29, 2022, Mr. Williams was indicted in case number CT221306X. JA39. Mr. Williams's state public defender filed a number of mandatory motions and a discovery demand. JA39, JA41. In November and December, Mr. Williams filed several pro se motions, including a Motion for Bill of Particulars, a Motion for Grand Jury Transcripts, a Motion to Dismiss Indictment, a Motion to Suppress, and a Motion to Return Property. JA351. On December 13, 2022, the circuit court scheduled a Bail Review hearing for January 4, 2023, a Motions hearing for February 17, 2023, and a Jury Trial for March 16, 2023. JA52.

The circuit court case was ultimately dismissed. At no time before the case was dismissed was an evidentiary hearing held, or any witness testimony taken. Mr. Williams's public defender in that case never received discovery from the state, and that she was told by the Assistant States Attorney the case was going to be pursued in federal court.

Within two days of the appellant's arrest, ATF Special Agent Katherine Rottman received information from PGCPD regarding Mr. Williams's arrest two days prior. That same day, the ATF ran Mr. Williams's criminal history. On September 14, 2022, SA Rottman received from PGCPD the three cell phones seized from Mr. Williams's vehicle and checked them into ATF evidence. On September 28, 2022, SA Rottman applied to US District Court Magistrate Judge Simms for a search warrant of the cell phones. JA78. A search warrant was issued on September 29, 2022, with an execution deadline of October 13, 2022. Additional discovery documents show that federal firearms examinations were done in November. The federal indictment in this case was returned by the Grand Jury on December 21, 2022. JA19. On February 1, 2023, Mr. Williams appeared in federal court via writ for an initial appearance in this case. JA4.

### 2.    Speedy Trial Act

The Speedy Trial Act provides, in relevant part: "Any information or indictment charging an individual with the commission of an offense shall be filed

within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). If the government fails to comply with this timeline, the "complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). This Court interprets these provisions as requiring the government to indict a defendant "within 30 days of his 'federal arrest upon a federal charge[.]'" *United States v. Woolfolk*, 399 F.3d 590, 594 (4th Cir. 2005) (quoting *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995)). Federal Rule of Criminal Procedure 48(b) authorizes the dismissal of an indictment if unnecessary delay occurs in presenting a charge to a grand jury.

Typically, if an individual is being lawfully held on state charges, his arrest for those charges does not trigger the Speedy Trial Act's thirty-day clock. *Thomas*, 55 F.3d at 148. However, this has been recognized as the "ruse exception" to this normal rule, holding that the Speedy Trial Act's "provisions are triggered in those instances where the government has knowledge that an individual is being held by state authorities only to answer to federal charges." *Woolfolk*, 399 F.3d at 596. *See also United States v. Rodriguez-Amaya*, 521 F.3d 437, 442 (4th Cir. 2008) Federal prosecutors "knew or should have known that the defendant was restrained solely to ultimately answer to federal charges," then his "restraint" results "from federal action."

Clearly, Mr. Williams's detention by state authorities was a ruse for later federal criminal prosecution. First, Mr. Williams's state case never showed any indication of going anywhere. No hearings were held, no witnesses testified, no discovery was produced. While Mr. Williams and his attorney filed pre-trial motions, the record does not reflect that the state ever responded to them.

Second, the federal government knew of Mr. Williams's detention and knew it intended to bring his case federally. The ATF record establishes an active federal investigation within days, and

Third, a federal magistrate became involved within weeks of Mr. Williams's arrest. While he remained detained on state charges, a magistrate Judge signed the cell phone search warrant application. Finally, Mr. Williams's state public defender in Prince George's County was informed by the state that the case was being pursued federally.

Because Mr. Williams's state prosecution was a ruse for the eventual federal prosecution, his arrest on September 10, 2022, qualifies as "restraint from federal action" triggering the Speedy Trial Act's thirty-day timeline for indictment. And because 102 days passed between Mr. Williams's arrest and federal indictment, the indictment should have been dismissed pursuant to the motion to dismiss filed by trial counsel.

## CONCLUSION

For the foregoing reasons, the appellant, John Robert Williams III, requests that this Court vacate his conviction and sentence and remand this case to the district court for further proceedings.

## REQUEST FOR ORAL ARGUMENT

John Robert Williams III, through counsel, requests oral argument on the matters presented herein.

LAW OFFICE OF MARC G. HALL, P.C.

/s/ *Marc G. Hall*
Marc G. Hall
6411 Ivy Lane Ste. 304
Greenbelt, Maryland 20770
Tel:    (240) 205-3041
Email: mghlaw@mac.com

*Attorney for John Robert Williams III*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 24-4503      **Caption:** U.S. v. John Williams, III

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains _____3,354_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word 2016 _____ [*identify word processing program*] in
14 point Times New Roman _____ [*identify font size and type style*]; or

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Marc G. Hall _____

Party Name Appellant _____

Dated: 02-13-2025 _____

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Brief of Appellant and Joint Appendix were delivered via ECF this 13th day of February 2025 to Assistant United States Attorney, at the following address: Office of the United States Attorney, Greenbelt, MD.


/s/ Marc G. Hall
*Counsel for Appellant*