No. 24-4503

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### UNITED STATES OF AMERICA,

Plaintiff – Appellee,

**v.**

### JOHN ROBERT WILLIAMS, III,

Defendant – Appellant.

On Appeal from the United States District Court
for the District of Maryland, Southern Division,
The Honorable Theodore D. Chuang, District Judge.

## APPELLEE'S RESPONSE BRIEF

<div style="margin-left: 50%;">

Kelly O. Hayes
United States Attorney

David C. Bornstein
Assistant United States Attorney
Chief, Appellate Division

United States Attorney's Office
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 290-4800

</div>

## TABLE OF CONTENTS

Table of Authorities ...................................................................................................iv

Jurisdictional Statement ..............................................................................................1

Statement of the Issues on Appeal ..............................................................................2

Statement of the Case...................................................................................................3

      A.     Williams's Underlying Criminal Conduct ...........................................3

      B.     Relevant Procedural History ................................................................6

Summary of the Argument...........................................................................................9

Argument.....................................................................................................................10

     **I.**    **Williams has waived his claim of error that 18 U.S.C.
§ 922(g)(1) is unconstitutional; in any event, the district
court did not plainly err in that regard.**

      A.     Issue...................................................................................................10

      B.     Standard of Review ...........................................................................10

      C.     Analysis .............................................................................................11

     **II.**   **Williams has waived his claim of error that the district
court erred in its suppression ruling; in any event, the
court did not err in denying suppression.**

      A.     Issue...................................................................................................18

      B.     Standard of Review ...........................................................................18

      C.     Analysis .............................................................................................18

**III.** **Williams has waived his claim of error that the district court erred in its Speedy Trial Act ruling; in any event, the court did not err in denying his motion.**

    A.    Issue .......................................................................................25

    B.    Standard of Review ...............................................................25

    C.    Analysis ................................................................................25

Conclusion ...........................................................................................29

Statement Regarding Oral Argument ...................................................30

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Belk, Inc. v. Meyer Corp.*, 679 F.3d 146 (4th Cir. 2012)....................................10, 13

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015)...............................................14

*Burgess v. Goldstein*, 997 F.3d 541 (4th Cir. 2021).........................................13, 20

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) .................................11

*Faigin v. Kelly*, 184 F.3d 67 (1st Cir. 1999)...........................................................10

*Gibbons v. Gibbs*, 99 F.4th 211 (4th Cir. 2024) ....................................................15

*Greer v. United States*, 593 U.S. 503 (2021).....................................................10, 12

*Hensley v. Price*, 876 F.3d 573 (4th Cir. 2017)................................................12, 19

*Hillman v. IRS*, 263 F.3d 338 (4th Cir. 2001)..........................................................14

*In re Under Seal*, 749 F.3d 276 (4th Cir. 2014).......................................................14

*Johnson v. United States*, 734 F.3d 352 (4th Cir. 2013)..............................13, 20, 22

*Mahdi v. Stirling*, 20 F.4th 846 (4th Cir. 2021) ......................................................14

*Missouri v. McNeely*, 569 U.S. 141 (2013) .............................................................19

*Nixon v. City & Cnty. of Denver*, 784 F.3d 1364 (10th Cir. 2015)..............13, 20, 25

*Quintero v. Garland*, 998 F.3d 612 (4th Cir. 2021) ...............................................20

*Suarez-Valenzuela v. Holder*, 714 F.3d 241 (4th Cir. 2013) .............................11, 13

*Texas v. Brown*, 460 U.S. 730 (1983).....................................................................24

*United States v. Burgess*, 684 F.3d 445 (4th Cir. 2012) .........................................25

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) .................................... 15-16

*United States v. Finch*, 679 F.2d 1083 (4th Cir. 1982) .........................................24

*United States v. Hager*, 721 F.3d 167 (4th Cir. 2013) ....................................10, 12

*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) ...................................11, 19

*United States v. Hunt*, 123 F.4th 697 (4th Cir. 2024) ..................................... 15-17

*United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024) .....................................16

*United States v. Johnson*, 599 F.3d 339 (4th Cir. 2010) ........................................23

*United States v. Leeson*, 453 F.3d 631 (4th Cir. 2006) ..........................................14

*United States v. Miller*, 41 F.4th 302 (4th Cir. 2022) ............................................12

*United States v. Nutter*, 137 F.4th 224 (4th Cir. 2025) .................................... 16-17

*United States v. Olson*, 114 F.4th 269 (4th Cir. 2024) ...........................................10

*United States v. Rahimi*, 602 U.S. 680 (2024) ......................................................16

*United States v. Rathburn*, 98 F.4th 40 (1st Cir. 2024) ..........................................14

*United States v. Sutherland*, 103 F.4th 200 (4th Cir. 2024) ...................................27

*United States v. Turner*, 122 F.4th 511 (4th Cir. 2024) ..........................................18

*United States v. Woolfolk*, 399 F.3d 590 (4th Cir. 2005) .................................. 26-29

## STATUTES

18 U.S.C. § 921(a)(20) ............................................................................................16

18 U.S.C. § 922(g)(1) ................................................................ 15-16

18 U.S.C. § 922(g)(9) ...................................................................16

18 U.S.C. § 3161(b) ......................................................................26

18 U.S.C. § 3231 .............................................................................4

28 U.S.C. § 1291 .............................................................................4

## **OTHER AUTHORITIES**

4th Cir. R. 28(f) ............................................................................19

Fed. R. App. P. 4(b)(1)(A) ..............................................................1

Fed. R. App. P. 28(a)(6) ..........................................................11, 18

Fed. R. App. P. 28(a)(8)(A) .....................................................11, 19

Fed. R. Crim. P. 51(b) ..................................................................12

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction of defendant-appellant John Robert Williams's federal offense. 18 U.S.C. § 3231. On September 12, 2024, it entered a judgment of conviction against him. JA 494-499.[1] On September 16, 2024, Williams timely filed a notice of appeal from that final judgment. JA 500; *see* Fed. R. App. P. 4(b)(1)(A). This Court has jurisdiction to hear his appeal. 28 U.S.C. § 1291.

---

[1] Citations of "JA" refer to the Joint Appendix; "AB," to Appellant's Opening Brief; and "ECF No.," to an electronic case filing in the proceedings below, *United States v. Williams*, No. 8:22-cr-00453-TDC (D. Md. filed Dec. 21, 2022).

I.     Whether Williams has waived his assignment of error that 18 U.S.C. § 922(g)(1) is unconstitutional, and whether the district court plainly erred in that regard.

II.    Whether Williams has waived his assignment of error that the district court erred in its suppression decision, and whether the court erred by denying suppression.

III.   Whether Williams has waived his assignment of error that the district court erred in its Speedy Trial Act ruling, and whether the court erred by not dismissing the indictment.

**A.      Williams's Underlying Criminal Conduct[2]**

Corporal Glenn Smith of the Prince George's County Police Department had been a police officer in the district encompassing the Tobacco World in Oxon Hill, Maryland, for almost 30 years. ECF No. 54 at 38-39. As a squad supervisor, he was no longer "assigned to a beat." *Id.* Instead, he helped perform premises checks and thus spent "at least" one hour "every shift" across the street from Tobacco World. *Id.* at 39; *see also id.* at 41 (stating that as "a supervisor," he has "time" to "sit there" and surveil); *id.* at 42 (clarifying that he performed his checks on "Tobacco World"). The area was home to a "lot of [drug] trafficking," which took place in public. *Id.* at 40. "You actually can see a lot of people making their transactions," Corporal Smith testified. *Id.* "It's all [in] plain sight in that area," he added. *Id.* at 40-41. Over his long career, he had made "at least a couple hundred" drug arrests. *Id.* at 37.

For a "couple weeks," Corporal Smith saw a white Chevy Trailblazer parked at Tobacco World, and he saw a lot of transactions occurring "at the vehicle itself." ECF No. 54 at 42. He observed "people walking up" to it and "exchanging money for what [he] believe[d] to be marijuana." *Id.* He also smelled the marijuana that the

---

[2]  Because Williams is challenging the district court's suppression decision but not any decision about the sufficiency of the evidence at trial, these facts are gleaned from the suppression hearing. *See* ECF No. 54 (hearing transcript).

people were smoking. *Id.* He saw the white Trailblazer there both at day and night from his perch "right across the street." *Id.* It was there "[e]very day" from about 3 p.m. to well "into the night until the store either slowed down or closed." *Id.* at 43. The hand-to-hand drug transactions often occurred at the Trailblazer's windows. *Id.* Corporal Smith communicated his observations of the Trailblazer and its foot traffic to Officer Thomas Waters, a younger member of his district. *Id.* at 44-45, 59-60. He did so for "the first time" at "the beginning of September" 2022. *Id.* at 60. The two of them discussed Smith's observations of and suspicions about the Trailblazer, including that it was "involved in narcotics transactions," on "multiple occasions throughout that month." *Id.* Throughout these conversations in which Smith shared his information with Waters, Waters had not yet seen the vehicle himself. *Id.*

Officer Waters knew the 6200 block of Livingston Road in Oxon Hill, where Tobacco World is located, as an "open-air drug market." ECF No. 54 at 56-58. It is a "high-crime area" and one of the "hot spot areas" in the district. *Id.* Indeed, Officer Waters testified that "every patrol squad or officer assigned to our station will have cause at some point to interact with th[at] particular hundred block." *Id.*

On September 10, 2022, Officer Waters encountered the white Chevy Trailblazer during his evening shift. ECF No. 54 at 60, 65. It was "illegally parked" next to Tobacco World, and defendant-appellant John Robert Williams, III, was

4

inside of its "open driver door." *Id.* at 62, 97. As Officer Waters's unmarked police car entered Tobacco World's parking lot and neared the Trailblazer, Williams was with "another individual," turning from his vehicle's interior, and "holding a blue drawstring-style bag." *Id.* at 62-63, 99.[3] But when Williams caught sight of Officer Waters (who was dressed in a police uniform), he "immediately turn[ed] back and put[] the bag back inside the vehicle." *Id.* at 63, 142. Officer Waters had been trained in identifying drugs, drug packaging, and drug transactions. *Id.* at 72-73. And he concluded that Williams was "trying to conceal contraband." *Id.* at 142. In reaching that conclusion, Officer Waters considered Corporal Smith's information and the fact that he was in "a high-crime area used as an open drug market." *Id.* He called for backup to assist him with an investigative stop. *Id.* at 64-65.

When other officers arrived, Officer Waters stopped Williams. ECF No. 54 at 66-67. Meanwhile, the other officers interacted with the other people hanging around Williams's Trailblazer. *Id.* at 101-102, 108-110. Officer Waters asked Williams to step towards his police car, and as Williams "crosse[d] in front of [him]," he shined his flashlight on Williams's "back pocket" and saw "a firearm in his pocket." *Id.* at 67. Officer Waters handcuffed Williams because of "the presence of the firearm in

---

[3] At the suppression hearing, the United States played a surveillance video that captured some of what Officer Waters saw. *See* Hr'g Ex. 8. Waters later ran the Trailblazer's tag, and the vehicle was registered to Williams. ECF No. 54 at 105.

his back pocket." *Id.* at 68. The officer then walked up to the Trailblazer and did a "cursory scan" of its interior with his flashlight, and he saw "in plain view" on "the front driver's seat" what he "knew to be" drugs, namely, marijuana. *Id.* at 69-70. He later discovered that the Trailblazer was "unlocked," so he opened its door and saw "two additional firearms on the front floorboard." *Id.* He also saw "a large quantity of assorted narcotics" and drug paraphernalia, including "scales and packaging materials," inside Williams's Trailblazer. *Id.* at 71.

The officers arrested Williams and transported him to their stationhouse for processing. ECF No. 54 at 84. Officer Waters drafted a statement of probable cause setting forth the state offenses that Williams had committed. *Id.* at 82, 84.

## B. Relevant Procedural History

The day after he was arrested by local police officers on September 10, 2022, Williams appeared before a Maryland court and was ordered "held without bail." JA 34. Five days later, his state public defender moved the Maryland court for discovery and a preliminary hearing. JA 36-38. Later that month, a Maryland grand jury issued an indictment charging Williams in 28 counts for his criminal conduct, including his unlawful possession of three firearms and various controlled substances. JA 39-48. On December 13, 2022, the Maryland court scheduled a pretrial motions hearing for February 2023 and a jury trial for March 2023. JA 52.

While Maryland pursued state criminal charges against Williams, federal law enforcement learned of his arrest on those state charges. JA 55. A Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) agent obtained from a federal magistrate judge a warrant to search cellphones taken from Williams's vehicle. JA 57-78.

On December 21, 2022, a federal grand jury handed up an indictment charging Williams with one count of being a felon possessing a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). JA 19-21.

On January 4, 2023, Maryland filed a *nolle prosequi* in Williams's state case, which resulted in the case's dismissal and his release "as to th[at] case only." JA 53. The *nolle prosequi* did not result in Williams's release from state custody, however, because he remained "detained without bond in connection with [his] Violation of Probation proceeding in [another] case." JA 30 (Williams admitting it); *see also* JA 81 (the United States stating in March 2023 that Maryland was still holding Williams "without bond" on "another state criminal case" and that his violation-of-probation hearing was "set for May 5, 2023," in Maryland court). Williams had a long record of felony drug convictions that reached back decades—into his teenage years. ECF No. 154 at 7-11, ¶¶ 30-37. Starting in his mid-20s (in the mid-aughts), he also began to acquire a string of felony gun convictions. *Id.* at 8-11, ¶¶ 34-37. And when he was released from Maryland prison in August 2021 for his latest round of felony gun and

drug convictions, Maryland required that he serve a five-year term of "supervised probation," which lasted until August 2026. *Id.* at 10-11, ¶ 37. So his new arrest in September 2022 triggered a violation-of-probation hearing in that older case. *Id.*

On February 1, 2023, Williams appeared in federal district court for his initial appearance in this case, JA 4, and he was brought there from Maryland custody by means of a writ of habeas corpus ad prosequendum, JA 30, JA 82.

Williams moved the district court to suppress the evidence against him on the ground that the police did not have reasonable suspicion to stop him or probable cause to search his vehicle. JA 22-27. He also moved to dismiss the indictment under 18 U.S.C. § 3161(b) on the ground that it was filed more than 30 days after Maryland police officers arrested him on state charges. JA 28-33. The United States opposed both motions. JA 80-90 (opposing motion to dismiss); ECF No. 26 (opposing motion to suppress). The court denied them in rulings from the bench. JA 153-166 (denying motion to dismiss); JA 177-188 (denying motion to suppress). Williams did not file a motion seeking to challenge the indictment on Second Amendment grounds.

After a four-day trial before the Honorable Theodore D. Chuang and a jury, the jury convicted Williams of the 18 U.S.C. § 922(g)(1) charge. ECF No. 139. The district court sentenced him to 72 months in prison, to be followed by three years of supervised release. JA 494-499. This timely appeal follows.

## SUMMARY OF THE ARGUMENT

This is the rare appeal where every claim of error is waived either for failure to comply with Federal Rule of Appellate Procedure 28(a), or failure to address the substance of the decisions being challenged, or both. Williams raises three issues: (1) whether 18 U.S.C. § 922(g)(1) is unconstitutional under the Second Amendment; (2) whether the evidence that police officers took from his person and vehicle should have been suppressed under the Fourth Amendment; and (3) whether the indictment should have been dismissed under the Speedy Trial Act. In arguing each issue, Williams repeatedly fails to direct the Court to any facts in the record, to where the challenged rulings can be found, and to any of the findings, conclusions, and reasons underlying the challenged rulings. He thereby waives all the claims.

The merits of Williams's appeal are also straightforward. Under controlling caselaw, § 922(g)(1) is constitutional facially and as applied to him. The officers had reasonable suspicion to stop him based on their observations of hand-to-hand drug transactions occurring at his vehicle, and probable cause to search the vehicle on seeing drugs in plain view inside it. Finally, his state arrest and state custody on state charges did not constitute a federal arrest or federal custody under the so-called ruse exception to the Speedy Trial Act.

In sum, the Court should reject the claims of error as waived and affirm.

**I.    Williams has waived his claim of error that 18 U.S.C.
§ 922(g)(1) is unconstitutional; in any event, the district
court did not plainly err in that regard.**

## Issue:

Williams argues that the statute defining his offense of conviction, 18 U.S.C.
§ 922(g)(1), is unconstitutional under the Second Amendment. AB 4-9.

## Standard of Review:

This Court generally reviews "a defendant's challenge to the constitutionality
of a statute de novo." *United States v. Hager*, 721 F.3d 167, 182 (4th Cir. 2013). But
"when the issue is not presented to the district court," the Court reviews instead "for
plain error." *Id.* It "is the appellant's burden to establish that he has preserved [any]
claim of error" he raises. *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 153 n.6 (4th Cir.
2012) (quoting *Faigin v. Kelly*, 184 F.3d 67, 87 (1st Cir. 1999)).

Under plain-error review, Williams, as the appellant, "must show that an error
occurred, it was plain, it affected his substantial rights, and it seriously affects the
fairness, integrity, or public reputation of the judicial proceedings." *United States v.
Olson*, 114 F.4th 269, 273 (4th Cir. 2024); *see also Greer v. United States*, 593 U.S.
503, 508 (2021) (explaining that the appellant "has the burden of establishing each
of the four requirements for plain-error relief").

**Analysis:**

As an initial matter, Williams has waived this assignment of error because his opening brief fails to comply with Federal Rule of Appellate Procedure 28(a) in several respects. "This Court has held that '[f]ailure to comply with the specific dictates of [Rule 28] with respect to a particular claim triggers abandonment of that claim on appeal.'" *Suarez-Valenzuela v. Holder*, 714 F.3d 241, 248 (4th Cir. 2013) (alterations in original) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999)); *see also United States v. Hassan*, 742 F.3d 104, 128 n.17 (4th Cir. 2014) (emphasizing in the criminal context that failing to comply with "Federal Rule of Appellate Procedure 28(a)" results in abandonment of the claim). Rule 28(a) provides that an appellant's "statement of the case" must set forth "the facts relevant to the issues submitted for review, . . . the relevant procedural history, . . . [and] the rulings presented for review, with appropriate references to the record." Fed R. App. P. 28(a)(6). The Rule further provides that the appellant's "argument" section must set forth his "contentions and the reasons for them, with citations to the . . . parts of the record on which [he] relies." Fed. R. App. P. 28(a)(8)(A). Williams completely ignores these dictates in arguing this assignment of error, thereby waiving it.

Despite asserting that this assignment of error "is reviewed de novo," AB 4, Williams fails to identify where in the record the alleged error can be found. To be

reviewed de novo, the issue must have been "presented to the district court," *Hager*, 721 F.3d at 182, in connection with "the relevant 'court ruling or order,'" *Greer*, 593 U.S. at 507 (quoting Fed. R. Crim. P. 51(b)). But Williams says absolutely nothing about this issue's "relevant procedural history," "the rulings presented for review," or even the "parts of the record on which [he] relies" in clear contravention of Rules 28(a)(6) and (a)(8)(A). He does not provide that essential information in his three-sentence Statement of Case, which does not mention *any* motion of his or any ruling by the court (except for his sentencing). *See* AB 1. He also does not provide it in the argument section, which does not once cite the Joint Appendix or the original record. *See* AB 4-8. He wholly ignores these core procedural rules, leaving it to this Court to scour the record to figure out where, if anywhere, the district court held that his statute of conviction is constitutional. Because his "opening brief fails to include any record citations supporting his arguments," the Court should "consider them waived." *United States v. Miller*, 41 F.4th 302, 313 (4th Cir. 2022).

Cognizant that appellate courts "are not like pigs, hunting for truffles" in the record, and that it is "not [the Court's] job" to "wade through the record," *Hensley v. Price*, 876 F.3d 573, 580 n.5 (4th Cir. 2017), the United States itself has looked through the record and found no trace of Williams's Second Amendment challenge or the district court's ruling on the issue. So the United States does not know which

12

aspects of this assignment of error, if any, are actually preserved, nor the reasons the district court gave for concluding that 18 U.S.C. § 922(g)(1) is constitutional either facially or as applied to Williams, further underscoring why the Court should deem this claim waived. *See Belk, Inc.*, 679 F.3d at 153 n.6 (holding that appellant waived claim of error where, "importantly, [appellant] fails to provide a record citation to where it objected to [the district court's action]," thereby failing to direct this Court's attention to where the alleged error occurred and its objection, if any). What is more, Williams "fails to address the substance of the district court's ruling," *Burgess v. Goldstein*, 997 F.3d 541, 555 n.6 (4th Cir. 2021), so he "has not challenged the basis for the district court's decision in any meaningful way," *Johnson v. United States*, 734 F.3d 352, 360 (4th Cir. 2013) (explaining why appellant "abandoned or waived his challenge to [it]"). In the circumstances, the Court should conclude that Williams has waived this assignment of error. *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision was wrong," which requires "explain[ing] what was wrong with the reasoning that the district court relied on in reaching its decision.").

Now that the United States has pointed out Williams's briefing deficiencies, he "cannot remedy the situation" by filling in those gaps "in his reply brief," when it would come too late for the United States to respond. *Suarez-Valenzuela*, 714 F.3d

at 249; *see also Mahdi v. Stirling*, 20 F.4th 846, 894 n.33 (4th Cir. 2021). "As this Court has observed, the purpose of the waiver doctrine is to avoid unfairness to an appellee and minimize the 'risk of an improvident or ill-advised opinion being issued on an unbriefed issue.'" *Brown v. Nucor Corp.*, 785 F.3d 895, 920 (4th Cir. 2015) (quoting *United States v. Leeson*, 453 F.3d 631, 638 n.4 (4th Cir. 2006)). Similarly, Williams may not change tack in his reply brief and argue for the first time that he never raised this issue below, that the district court never ruled on it, and that he can nonetheless show all four prongs of plain error. *See In re Under Seal*, 749 F.3d 276, 292 (4th Cir. 2014) (concluding that appellant "abandoned any argument that the district court plainly erred" in part because its failure to make that argument "in [its] opening appellate briefs constitutes a waiver"); *accord United States v. Rathburn*, 98 F.4th 40, 58 (1st Cir. 2024) ("[C]utting to the chase, because [appellant] does not acknowledge his failure to preserve his objection below or provide us with a plain error analysis of his [claim of error] in his opening brief, the argument is waived, and we need say no more."). Because Williams has blatantly failed to comply with Rules 28(a)(6) and (a)(8)(A), the Court should enforce the "negative consequences" that follow from such noncompliance—otherwise, as Judge Hamilton has noted, "the requirements of the rule would be hollow." *Hillman v. IRS*, 263 F.3d 338, 345 (4th Cir. 2001) (Hamilton, J., dissenting in part).

Although the Court should not reach the merits, Williams does not win on the merits, either. As he acknowledges, the Court has held that 18 U.S.C. § 922(g)(1) is constitutional in most instances. AB 7 (discussing *United States v. Hunt*, 123 F.4th 697 (4th Cir. 2024)). That statute categorically and permanently disarms "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." § 922(g)(1); *see also United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010) (observing that § 922(g)(1) "permanently disarms an entire category of persons"). *Hunt* held that § 922(g)(1) is "facially constitutional" and that Fourth Circuit precedent "foreclos[es] as-applied challenges," except where "the felony conviction is pardoned or the law defining the crime of conviction is found unconstitutional or otherwise unlawful." 124 F.4th at 702-03. Those holdings apply here with full force. And Williams does not argue that any, let alone all, of his prior felony convictions have been pardoned or found unlawful. *See* AB 4-8. That should end the matter. *See Gibbons v. Gibbs*, 99 F.4th 211, 213 (4th Cir. 2024) (explaining that a prior panel's published ruling on a legal issue "is binding on all future panels," even when "a future litigant identifies a fact, theory, or line of argument the previous panel could have but did not consider").

Williams nonetheless argues that "*Hunt* doesn't answer the important question as to whether [§ 922(g)(1)'s] prohibition is a lifetime ban or one that is more in line

with the temporary ban [in § 922(g)(8) at issue] in *Rahimi*." AB 7-8 (referencing

*United States v. Rahimi*, 602 U.S. 680 (2024), which upheld the constitutionality of

§ 922(g)(8)). But if *Hunt* did not mention whether § 922(g)(1) sets forth a permanent

or temporary ban on firearm possession, that is likely because it is obvious from the

statutory text that § 922(g)(1) "permanently disarms" anyone falling under its scope.

*Chester*, 628 F.3d at 680.[4] So it is the statute itself that answers the question.

Next, Williams argues this nation's "historical" tradition does not "justify the

broad, categorical firearm prohibition" in § 922(g)(1). AB 8. But the Court rejected

that very argument in *Hunt*, holding that "'legislatures traditionally employed status-

based restrictions to disqualify categories of persons from possessing firearms' and

that 'Congress acted within the historical tradition when it enacted § 922(g)(1).'"

123 F.4th at 705 (quoting *United States v. Jackson*, 110 F.4th 1120, 1129 (8th Cir.

2024)). Williams suggests that § 922(g)(1) would "pass constitutional muster" if its

prohibition on firearm possession were narrowed to apply only during the convicted

---

[4] This does not mean that § 922(g)(1) operates as a *per se* permanent ban for every convicted felon. *See United States v. Nutter*, 137 F.4th 224, 232 (4th Cir. 2025) (construing § 922(g)(9)). The statute applies only to people convicted of any "crime punishable by imprisonment for a term exceeding one year," § 922(g)(1), which is a term of art that excludes "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored," § 921(a)(20). So if a convicted felon is pardoned or has his conviction expunged, for example, he would no longer fall under § 922(g)(1)'s scope.

felon's "imprisonment and any following period of supervised release or probation." AB 8. But Williams's suggestion is "better suited" as a policy argument "to Congress to advocate amending the statutory language." *See United States v. Nutter*, 137 F.4th 224, 232 (4th Cir. 2025) (rejecting similar argument to § 922(g)(9) on that ground). It is not a concern "that would render [§ 922(g)(1)] unconstitutional on its face," *id.*, especially after *Hunt*. Nor does it apply to Williams's situation because he violated § 922(g)(1) while serving the term of "supervised probation" imposed by Maryland after his most recent slate of felony convictions. *See* ECF No. 154 at 10-11, ¶ 37. So he cannot argue that § 922(g)(1) is unconstitutional as applied to him on the basis of his suggested limitation to its temporal scope.

Finally, Williams suggests that his "prior criminal record" as set forth in "the Pre-Sentence Report"—which can be found at ECF No. 154—belies the notion that he "is 'dangerous' in any way that would justify disarmament." AB 8-9. If Williams intends that suggestion to serve as an as-applied challenge, it should be deemed waived based on his "fail[ure] to develop" it. *Nutter*, 137 F.4th at 229. He does not say what his "prior criminal record" was, let alone explain why it shows that he was not "dangerous" and thus could lawfully arm himself. *See* AB 8-9. In any event, *Hunt* forecloses any as-applied challenge on this ground. *See* 123 F.4th at 700.

In sum, the Court should reject this assignment of error.

**II.    Williams has waived his claim of error that the district court erred in its suppression ruling; in any event, the court did not err in denying suppression.**

**Issue:**

Williams argues that the district court erred in denying his motion to suppress the evidence against him. AB 9-11.

**Standard of Review:**

In reviewing the denial of a motion to suppress evidence, this Court reviews the district court's "legal conclusions de novo and its factual findings for clear error, considering the evidence in the light most favorable to the government." *United States v. Turner*, 122 F.4th 511, 516 (4th Cir. 2024).

**Analysis:**

As an initial matter, Williams has also waived this assignment of error because his opening brief yet again fails to comply with Federal Rule of Appellate Procedure 28(a)(6) and (a)(8)(A). *See supra* pp. 11-14 (explaining that he has waived his first assignment of error for these reasons). His Statement of Case does not set forth "the facts relevant to the issues submitted for review, . . . the relevant procedural history, . . . [or] the rulings presented for review." Fed. R. App. P. 28(a)(6). Indeed, it says nothing about his suppression motion, the related evidentiary hearing, or the findings and conclusions the district court made when denying the motion. *See* AB 1. He then

compounds those errors by completely ignoring in his Statement of Facts the facts the district court relied on in denying his motion—those adduced at the suppression hearing. *See* ECF No. 54 (hearing transcript); *see also* 4th Cir. R. 28(f) (providing that appellant's brief "must include a narrative statement of *all of the facts necessary* for the Court to reach the conclusion which the brief desires" (emphasis added)). His Statement of Facts instead gleans its facts only from the trial transcript, without any attempt to explain how the trial record aligns with or diverges from the suppression record. *See* AB 2-3 (citing trial transcript from JA 237 to JA 363 for its facts). Even worse, his six-paragraph argument section (two paragraphs set forth the standard of review and boilerplate caselaw) does not once cite the Joint Appendix or the original record, thereby failing to comply with the fundamental requirement that he cite the "parts of the record on which [he] relies." Fed. R. App. P. 28(a)(8)(A). This style of briefing effectively places the burden on the Court to "wade through the record and make arguments" for Williams, *Hensley*, 876 F.3d at 580 n.5, because of the "fact-intensive, totality of the circumstances analyses" that his Fourth Amendment claim requires, *Missouri v. McNeely*, 569 U.S. 141, 158 (2013) (plurality op.). Instead, the Court should hold that he has waived or abandoned this claim by failing to comply with the specific dictates of Rule 28(a). *Hassan*, 742 F.3d at 128 n.17.

Williams has waived this assignment of error for an additional reason: As with his first assignment of error, he "fails to address the substance of the district court's ruling," *Burgess*, 997 F.3d at 555 n.6, and so does "not challenge[] the basis for the district court's decision in any meaningful way," *Johnson*, 734 F.3d at 360. Without challenging "the reasoning that the district court relied on in reaching its decision," it is difficult, if not impossible, for Williams to "explain . . . why the district court's decision was wrong." *Nixon*, 784 F.3d at 1366. Moreover, when an appellant "does not contest [a] determination" reached below, he "has waived any arguments related to that determination on appeal." *Quintero v. Garland*, 998 F.3d 612, 618 n.1 (4th Cir. 2021). Once this Court accepts those unchallenged determinations (of both law and fact), there is little left for the Court to do but affirm.

In denying the motion to suppress, the district court found—consistent with the facts adduced at the suppression hearing, *see supra* pp. 3-6—that Corporal Smith had observed "over multiple weeks" a "white Chevy Trailblazer" next to Tobacco World, which was a "high crime area, known for open air drug dealing," and that he had seen "people walking up to the vehicle and exchanging money in what appeared to be drug transactions." JA 177-178. The court also found that Corporal Smith had "provided this information to Officer Waters" in "early September 2022 or about a week before" Waters, himself, encountered the Trailblazer. JA 178. The court found

next that on September 10, 2022, Officer Waters "drove through the parking lot near Tobacco World," "saw a white Chevy Trailblazer parked near the store," and "saw Mr. Williams standing in the driver's door frame . . . next to another man and holding a blue drawstring bag." JA 178. When "Williams saw [Officer Waters]," the court found that he "turned and tossed the blue drawstring back into the Trailblazer." JA 178. The court concluded that Officer Waters was justified in thinking that Williams "appeared to be beginning some sort of drug transaction [involving] the blue bag" and that Williams "acted in a nervous or evasive manner" when he "turned and threw the blue bag back into the vehicle." JA 181. That was, the court said, "an apparently suspicion action." JA 181. The court also concluded that Officer Waters could view his observations in light of Corporal Smith's information "that a white Trailblazer had appeared to be involved in drug dealing outside of Tobacco World as recently as a week before." JA 181. Putting it all together, the court determined that Officer Waters had "reasonable suspicion for a *Terry* stop." JA 183.

The district court then found that during the *Terry* stop Officer Waters "saw [Williams's] firearm without conducting a pat-down or a search," thereby providing the officer with sufficient justification to handcuff Williams and seize the firearm. JA 187. The court found further that the officer did not search the Trailblazer until he "saw drugs in plain view" inside it, which provided him with "probable cause to

search" it without a warrant "under the automobile exception." JA 187-188. On those grounds, the court denied Williams's motion to suppress. JA 188.

Williams does not acknowledge, let alone challenge, any of those findings or conclusions in arguing that the evidence against him "should have been suppressed by the trial court." AB 11. He merely asserts that he was "seized" when an "Officer Coleman ordered him to walk towards and stand next to his vehicle." AB 10.[5] He also asserts that before Officer Waters saw that he was armed, the officers "lacked a reasonable articulable suspicion that [he] committed any crime." AB 10. But that is all he says. *See id.* He does not reference, let alone develop any argument, based on the facts found by the district court or present in the suppression record. He does not challenge any of the court's specific (and many) findings of fact or conclusions of law—with the sole exception of its reasonable-suspicion determination. Even then, he does not engage with its legal analysis or the caselaw supporting it. *See* JA 180-187 (citing fourteen cases in its reasonable-suspicion ruling). In these circumstances, the Court should hold that Williams has "abandoned or waived his challenge" to the suppression ruling. *Johnson*, 734 F.3d at 360.

---

[5]  Officer Coleman appears to have been one of the officers who arrived when Officer Waters called for assistance before stopping Williams. *See* ECF No. 54 at 67, 101-106. The district court did not make any findings about Coleman. *See* JA 177-188. So it is unclear what part of the record, if any, supports Williams's assertion.

On the merits, the district court correctly determined that Officer Waters had reasonable suspicion to stop Williams. Waters had just seen Williams engage in what appeared to be a hand-to-hand drug transaction in a known open-air drug market, which Williams aborted in a suspicious and evasive manner when he saw Waters. Williams had conducted the drug transaction from the driver's door of a white Chevy Trailblazer parked next to Tobacco World. What is more, days earlier, Corporal Smith had informed Waters about his own observations—over the span of weeks—of numerous suspected hand-to-hand drug transactions occurring at the white Chevy Trailblazer next to Tobacco World. *See* JA 177-178 (court's fact-finding); *see also supra* pp. 3-5 (record citations for findings). Because officers had seen the person in the Trailblazer make "what appeared to be a series of hand-to-hand exchanges with multiple people in a known open-air drug market," they had "reasonable suspicion" that the person "was dealing drugs, justifying a brief investigatory detention." *United States v. Johnson*, 599 F.3d 339, 340 (4th Cir. 2010).

Williams's challenge to the district court's probable-cause decision related to the search of his vehicle is equally meritless. The district court correctly held, based on its express crediting of Officer Waters's hearing testimony, that the officer had probable cause to search the Trailblazer when he "saw drugs in plain view" when he shined "his flashlight into the [vehicle]" from his position outside it. JA 187-188;

23

*see also supra* p. 6 (record citations for underlying findings). The court also correctly held that the officer's observations of the drugs in plain view, even though assisted by a flashlight, "was not a search within the meaning of the Fourth Amendment." JA 187-188; *see also Texas v. Brown*, 460 U.S. 730, 739-740 (1983) (plurality op.) (holding that similar conduct "simply does not constitute a search"); *United States v. Finch*, 679 F.2d 1083, 1085 (4th Cir. 1982) (similar). Instead of confronting the court's findings and conclusions, Williams asserts, without any citation to the record, that the officers "took his car keys from his person, then looked into, opened, and searched his vehicle." AB 11. That assertion is completely divorced from the facts adduced at the suppression hearing and underlying the court's suppression decision. And Williams does not even try to argue that the court's findings of fact are clearly erroneous and that his are correct. *See id.* Nor does he engage at all with the court's Fourth Amendment analysis. So here, too, his arguments plainly fail.

In sum, the Court should also reject this assignment of error.

**III.** **Williams has waived his claim of error that the district court erred in its Speedy Trial Act ruling; in any event, the court did not err in denying his motion.**

**Issue:**

Williams argues that the district court erred in denying his motion to dismiss the indictment on Speedy Trial Act grounds. AB 11-15.

**Standard of Review:**

The Court reviews "the district court's interpretation of the Speedy Trial Act de novo, and any related factual findings for clear error." *United States v. Burgess*, 684 F.3d 445, 450 (4th Cir. 2012).

**Analysis:**

Williams has waived this assignment of error, too, because in challenging the district court's denial of his motion to dismiss the indictment on Speedy Trial Act grounds, he does not grapple with the court's actual decision, including any of the findings of fact, conclusions of law, or analysis and reasoning supporting it. *See* AB 11-15. As argued more fully above, *see supra* pp. 13, 20, Williams's complete failure to address, let alone meaningfully challenge, the district court's decision means that he has waived this claim of error because he has failed to shoulder the "first task of an appellant, [which] is to explain to [this Court] why the district court's decision was wrong." *Nixon*, 784 F.3d at 1366. That should end the matter.

On the merits, the district court properly denied Williams's motion to dismiss the indictment. *See* J.A. 153-166. The Speedy Trial Act provides, as relevant, that any "indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested . . . in connection with such charges." 18 U.S.C. § 3161(b). To trigger that provision, the individual "must be under 'federal arrest' or be in 'federal custody.'" *United States v. Woolfolk*, 399 F.3d 590, 595 (4th Cir. 2005). Here, Williams was arrested federally long *after* the indictment was filed. *See* JA 4 (showing that the indictment was filed on December 21, 2022, and Williams was arrested federally on February 1, 2023). So § 3161(b) was not violated.

Williams nonetheless argues that § 3161(b) was triggered by his state arrest on state charges on September 10, 2022, because his "state arrest and prosecution served as a placeholder for what would eventually be a federal indictment." AB 11. He argues that the United States knew that throughout late 2022 he was "being held by state authorities only to answer to federal charges." AB 14 (quoting *Woolfolk*, 399 F.3d at 596). He thereby invokes the so-called "ruse exception" to the Speedy Trial Act. *Woolfolk*, 399 F.3d at 596 n.7 (explaining the exception). But his argument does not get off the ground because of a factual concession he made in his underlying motion: Maryland detained him not only in connection with his "Prince George's

26

County charges" from September 10, 2022, but also "in connection with a Violation of Probation proceeding" in a different case. JA 30. Indeed, to get him to federal district court for his initial appearance, he had to appear "via writ [for habeas corpus ad prosequendum]." JA 30; *see also* JA 82. And he does not argue that his being "detained without bond" in connection with that other Maryland case was a ruse, providing a separate and independent ground for the denial of his motion and thus an alternate basis for affirmance. *United States v. Sutherland*, 103 F.4th 200, 211 (4th Cir. 2024) (stating that this Court is "entitled to affirm on any ground appearing in the record, including theories not relied upon . . . by the district court").

In any event, the district court properly concluded that "there were valid state charges pending throughout [Williams's] state detention" and that "the presence of th[ose] valid pending state criminal charges . . . prevent[ed] the start of the 30-day period" under § 3161(b). JA 155-156; *see also Woolfolk*, 399 F.3d at 595 (holding that "Government's filing of a complaint, serving of an arrest warrant, and lodging of that warrant as a detainer . . . , while [defendant] was in state custody answering to state charges, did not activate the provisions of the Speedy Trial Act"). What is more, the court determined that there was "no basis to conclude that the original state detention" was "a mere ruse" because "Williams was arrested by local police without the knowledge or involvement of any federal agents or prosecutors." JA 157-158.

The court also found that there was "no plausible argument that [Williams] was held longer than necessary to complete the state criminal prosecution" once the state had decided to "dismiss" the charges against him. JA 164. Finally, the court determined that there had been "no showing . . . at all" that the state prosecution was used only to "accommodate" the later federal case. JA 165. So the court denied Williams's motion to dismiss the indictment. JA 166. Because Williams does not challenge any of those findings or conclusions, it follows that Williams spent all of September through December 2022 "lawfully being held [in Maryland custody] to answer state charges." *Woolfolk*, 399 F.3d at 595; *see also* JA 53 (showing that Williams's state case was dismissed in January 2023). Thus, his time in Maryland custody "d[id] not trigger" the Speedy Trial Act. *Woolfolk*, 399 F.3d at 595.

There is one remaining loose end: Williams says that his state public defender "never received discovery" and "was told [that] the case was going to be pursued in federal court." AB 13. Setting aside his failure to provide record support for these assertions, the district court correctly noted that the Maryland court had set trial for March 2023, showing that the case was moving forward. JA 163. Williams does not point to anything in the record indicating that Maryland kept his state case alive to provide the federal government with more time to indict him.

In sum, the Court should reject this claim of error as well.

## CONCLUSION

The Court should conclude that Williams has waived all his assignments of error and affirm on that ground alone. But even if the Court reaches the merits of his arguments, they are still plainly unavailing. The Court should affirm Williams's judgment of conviction.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

/s/ David C. Bornstein
Assistant United States Attorney
Chief, Appellate Division
United States Attorney's Office
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 290-4800

## STATEMENT REGARDING ORAL ARGUMENT

The United States believes that this appeal does not warrant an oral argument because the appellant has waived all his assignments of error. But even though oral argument is not necessary, the United States nonetheless believes that any opinion that enforces the important rules set forth in Federal Rule of Appellate Procedure 28(a) should be published for the benefit of both the Court and the Bar.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B) because it contains 6,725 words, excluding the parts exempted under Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements set forth in Fed. R. App. P. 32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced serif typeface and plain, roman style using Times New Roman in 14 point.

Dated: June 6, 2025 /s/ David C. Bornstein
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 6, 2025, I electronically filed this brief with the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system and thereby electronically served it on Appellant John Robert Williams III through his counsel of record, who is a registered ECF Filer.

Dated: June 6, 2025 /s/ David C. Bornstein
Assistant United States Attorney